**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**LAREDO DIVISION**

US MAGISTRATE COURT
JSH-SDTX    **CLR**
FILED

**APR 2 1 2015**

David J. Bradley, Clerk
Laredo Division

| | |
|---|---|
| IN THE MATTER OF THE §<br>APPLICATION OF THE UNITED §<br>STATES OF AMERICA FOR AN ORDER §<br>AUTHORIZING (1) THE §<br>INSTALLATION AND USE OF A PEN §<br>REGISTER AND TRAP AND TRACE §<br>DEVICE, AND (2) RELEASE OF §<br>SUBSCRIBER AND OTHER §<br>INFORMATION FOR MOBILE §<br>TELEPHONE WITH MIN (956) 480-8437, §<br>IMSI #310150803617334 §<br>(Target Device #1) § | MISC. NO. 5: 15 mj 506 |

**APPLICATION**

## A. INTRODUCTION

Mary Lou Castillo, an Assistant United States Attorney for the Southern District of Texas, hereby applies to the Court for an Order:

1.    Pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing the installation use of a pen register and trap and trace device[1] on a cellular telephone with MIN (956) 480-8437 , IMSI , #310150803617334 subscribed to Maribel Gonzalez, 3406 South Texas Avenue, Laredo, Texas 78046 and believed to be used by Eduardo Gonzalez (hereinafter the **"Target Device #1."**)

2.    Pursuant to 18 U.S.C. §§ 2703(c), 2703(d), 3122, and 3123 and 47 U.S.C. § 1002, directing the **Target Device #1's** service provider (including any internet service provider or

---

[1]    A "pen register" is a "device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication ..." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number" or other identifiers "reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information not include the contents of any communication." 18 U.S.C. § 3127(4).

other electronic communications provider providing voice-over IP telephony [VoIP]),[2] and any and all other telecommunication providers, persons, or entities providing wire or electronic communications service in the United States whose assistance may facilitate the execution of the Order, to disclose or provide, upon oral or written demand by Deputies of the US Marshals Office (hereinafter the "**Investigative Agency.**")

a.    For the **Target Device #1**, records or other information pertaining to subscriber(s) or customer(s), including historical cell site information[3] and call detail records[4] (including in two-way radio feature mode) for the sixty (60) days prior to the date the Order is signed by the Court (but not including the contents of communications).

b.    For the **Target Device#1** , after receipt and storage,[5] records or other information pertaining to subscriber(s) or customer(s), including the means and source of payment for the service and cell site information, provided to the United States on a continuous basis for (a) the origination of a call from the **Target Device#1** or the answer of a call to the **Target Device #1**, (b) the termination of the call and (c) if reasonably available, during the

---

[2]    VoIP is essentially a type of hardware and software that allows people to use the internet as a transmission medium for telephone calls. In general, this means sending voice information in the form of digital packets of information rather than sending it through the traditional public switch telephone network.

[3]    A cell phone must send a radio signal to an antenna tower which, in turn, is connected to the provider's network. The area covered by the tower varies depending on the population density of the area. This area is often divided into thirds--120 degree sectors. "Cell site information" as used in this application refers to the antenna tower and sector to which the cell phone sends its signal. This includes the physical location and/or address of the cellular tower and identification of the particular sector of the tower receiving the signal.

[4]    "Call detail records" are similar to toll records (i.e. historical telephone records of telephone activity, usually listing outgoing calls and date, time, and duration of each call), which are made and retained in the ordinary course of business. However, "call detail records" is the term used when referring to toll records of mobile telephones rather than hardline telephones. Unlike toll records, however, call detail records also include a record of incoming calls and the cellsite/sector(s) used by the mobile telephone to obtain service for a call or when in an idle state.

[5]    "After receipt and storage" is intended to ensure that the information authorized under these paragraphs is information that is first captured and recorded by the provider before being sent to the Investigative Agency."

2

progress of the call, but not including the contents of the communications.

        c.    After receipt and storage, the following subscriber records and other information for all published, non-published, or unlisted dialing, routing, addressing, or signaling information captured by the pen register and trap and trace device on the **Target Device#1** :

       (A)   name;
       (B)   address;
       (C)   local and long distance telephone connection records, or records of session times and durations;
       (D)   length of service (including start date) and types of service utilized;
       (E)   telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address;
       (F)   date of birth;
       (G)   social security number;
       (H)   driver's license (state and number);
       (I)   contact names and numbers; and
       (J)   employment information.

        d.    Any and all changes (including additions, deletions, and transfers) in service regarding the **Target Device#1** , including telephone numbers (including IMSIs and UFMIs) and subscriber information (published, non-published, listed, or unlisted) associated with these service changes.

## B.   CERTIFICATION FOR A PEN REGISTER AND A TRAP AND TRACE DEVICE PURSUANT TO 18 U.S.C. §§ 3122 AND 3123

In support of this application, I state the following:

1.    I am an "attorney for the Government" as defined in Rule 1(b) (1) (B) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. § 3122, may apply for an order authorizing the installation and use of pen registers and trap and trace devices.

2.    I certify that the information likely to be obtained from the pen register and trap and trace device on the **Target Device #1** is relevant to an ongoing criminal investigation being conducted by the **Investigative Agency** in connection with possible violations of federal

criminal statutes, including Title 18 U.S.C. § 3146 (Failure to Appear) and § 1073 (Flight to avoid prosecution) by Eduardo GONZALEZ.

3.     In accordance with 18 U.S.C. § 3121(c), Applicant has informed the **Investigative Agency** that it shall use technology reasonably available to it to restrict the recording or decoding of electronic or other impulses to the dialing, routing, and addressing and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communication.

4.     Therefore, based upon the above Certification and pursuant to 18 U.S.C. §§ 3122 and 3123, I request that the Court issue an order authorizing:

a.     The **Investigative Agency** to install, or cause the provider to install, and use, a pen register device(s) anywhere in the United States to record or decode dialing, routing, addressing, or signaling information transmitted[6] from the **Target Device #1,** to record the date and time of such dialing's or transmissions, and to record the length of time the telephone receiver in question is "off the hook" or connected for incoming or outgoing calls, for a period of sixty (60) days from the date the order is signed by the Court.

b.     The **Investigative Agency** to install, or cause the provider to install, and use, a trap and trace device(s) on the **Target Device #1** anywhere in the United States to capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information[7] reasonably likely to identify the

---

[6]     Including dialing, routing, addressing, or signaling information transmitted over the communication service provider's network by a two-way radio feature (including, but not limited to, Nextel's "Direct Connect/Direct Dispatch," Verizon Wireless' "Push to Talk," or Sprint's "Ready Link"). This two-way radio feature, like a walkie-talkie, provides communication between similarly equipped mobile phones by pressing a button on the telephone. As mentioned, information transmitted by the two-way radio feature will not disclose content of the call.

[7]     Including dialing, routing, addressing, or signaling information transmitted over the communication service

source of a wire or electronic communication and to record the date, time, and duration of calls created by such incoming impulses, for a period of sixty (60) days from the date the Order is signed by the Court.

    c.  That, pursuant to 18 U.S.C. § 3123(b)(1)(c), the requested installation and use of a pen register as well as trap and trace device permit the use of each not only on the **Target Device #1**, but also on any changed telephone number(s) (MIN[s]) subsequently assigned to an instrument bearing the same IMSI, UFMI, or SIM as the **Target Device#1** , or any changed IMSI, UFMI and/or SIM subsequently assigned to the same MIN as the **Target Device#1** , and any additional changed MIN, IMSI, UFMI and/or SIM, whether the changes occur consecutively or simultaneously, listed to the same subscriber or account number as the **Target Device** #1 within the 60-day period authorized by the Order.

    5.  I further request, pursuant to 18 U.S.C. §§ 3123(a)(1) and  3123(b)(2), that the Order direct that the furnishing of information, facilities, and technical assistance necessary to accomplish the installation and operation of the pen register and trap and trace device by the **Target Device#1 's** service provider (including any internet service provider or other electronic communications provider providing VoIP), and any and all other telecommunication providers,[8] persons, or entities providing wire or electronic communications service in the United States whose assistance may facilitate the execution of the Order (hereinafter, collectively, the **"Target**

---

provider's network by a two-way radio feature (including, but not limited to, Nextel's "Direct Connect/Direct Dispatch," Verizon Wireless' "Push to Talk," or Sprint's "Ready Link").  As mentioned, information transmitted by the two-way radio feature will not disclose content of the call.

[8]  The reference to "any and all other telecommunication providers" is necessary so that the Court order is still effective in the event that the **Target Device #1** is transferred to another carrier pursuant to "Local Number Portability" ("LNP").  LNP allows a telephone user to change his telephone company but still keep the same telephone number.  However, to transfer (i.e. "port") a telephone number pursuant to LNP, the subscriber information must remain the same.  Thus, this reference applies if the **Target Device #1** is transferred (i.e. "ported") to another telephone carrier, but the telephone number and subscriber information remain the same.

**Device #1's Service Provider[s]")**, occur unobtrusively and with a minimum of interference with the services that are accorded the persons with respect to whom the installation and use is to take place, with reasonably compensation to be paid by the **Investigative Agency** for reasonable expenses directly incurred in providing such information, facilities, and assistance.

6.      I further request that the Order direct the **Target Device #1's Service Provider(s)** furnish the results of the pen register and trap and trace devices to Special Agents of the **Investigative Agency** as soon as practicable, on a continuing basis, twenty-four (24) hours a day for the duration of the order.

7.      I further request, because it is necessary to advance the purposes of this investigation, that the Court's Order direct the **Target Device #1's Service Provider(s)** not to terminate or restrict service to the **Target Device #1** ; provided that, upon notice to the Investigative Agency that the **Target Device #1's** service would otherwise be terminated for non-payment pursuant to routine billing practices, the **Investigative Agency** timely agrees in writing to assume financial responsibility for all services provided to the **Target Device#1** after termination would otherwise have been effectuated and continuing to the earlier of the **Investigative Agency's** written notice to terminate service or to the expiration of the Court order (and any extensions thereof).

C.      **SPECIFIC AND ARTICULABLE FACTS ESTABLISHING REASONABLE GROUNDS TO BELIEVE THAT SUBSCRIBER RECORDS AND CELL SITE INFORMATION ARE RELEVANT AND MATERIAL TO AN ONGOING CRIMINAL INVESTIGATION PURSUANT TO 18 U.S.C. § 2703**

1.      18 U.S.C. § 2703(d) provides that a court may issue an order authorizing disclosure of a record or other information pertaining to a telephone subscriber or customer (not including the contents of communications) when a United States agency provides the Court with

"specific and articulable facts showing that there are reasonable grounds to believe that…the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

The statute, by its own language, precludes holding the United States to a higher standard of proof, such as probable cause. See Communications Assistance for Law Enforcement Act (CALEA), Pub. L. No. 103-414 § 207(2), reprinted in 1992 U.S. Code Cong. & Admin. News 4292.  The House Report reflected that "[t]his section imposes an intermediate standard to protect on-line transactional records.  It is a standard higher than a subpoena, but not a probable cause warrant."  See H.R. Rep. No. 103-827, at 31-32 (1994), reprinted in 1994 U.S.C.A.A.N. 3489, 3511-12.

2.      For the purposes of obtaining a court order for disclosure as described in 18 U.S.C. §§ 2703(c)(1)(B) and 2703(c)(2), and in order to satisfy the requirements of 18 U.S.C. § 2703(d), Applicant, based on discussions with US Deputy Marshal William Gonzalez and other agents, hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the records and other information identifying subscribers (but not including the contents of communications) for telephone numbers identified through the pen register and trap and trace device on the **Target Device #1** , cell site information regarding the **Target Device #1** , subscriber information associated with any service changes regarding the **Target Device #1** , and the records or other information pertaining to subscribers (but not including the contents of communications) for the **Target Device #1**  will be relevant and material to an ongoing criminal investigation in connection with possible violations of federal criminal statutes, including Title 18 U.S.C. § 3146 (Failure to Appear) and § 1073 (Flight to avoid prosecution) by Eduardo GONZALEZ :

a. On April 21, 1999, defendant Eduardo GONZALEZ was arrested for Conspiracy to Possess with Intent to Distribute Marihuana and Cocaine as a result of a warrant issued under indictment L-99-CR-00206 returned by a Laredo Grand Jury in the Southern District of Texas, Laredo Division.  Over the Government's objection, on October 5, 1999, defendant Eduardo GONZALEZ was released on bond and placed on electronic monitoring.  On October 7, 1999, the electronic monitoring system advised of a power loss and the defendant failed to report at his scheduled time.  The U.S. Pretrial Services in Laredo, TX, made several attempts to locate the defendant with negative results and it was later determined that the defendant had absconded.  On October 8, 1999 defendant's case in Cause No. L-99-CR-0206 was set for jury selection.  Defendant failed to appear as scheduled.  On October 8, 1999, a warrant for the defendant's arrest was issued for Violations of Conditions of Pretrial Release.  On October 22, 1999, defendant Eduardo GONZALEZ was indicted by a Grand Jury for Failure to Appear in Cause No. L-99-CR-929 in the Southern District of Texas, Laredo Division. A warrant was issued for his arrest under said cause number.

Since 1999, multiple Deputy U.S. Marshals have attempted to apprehend GONZALEZ to no avail and it was determined that GONZALEZ was living in Lampazos, Nuevo Leon, MX.  On September 30, 2014, Deputy U.S. Marshal William GONZALEZ received information from the U.S. Department of State indicating that Eduardo GONZALEZ applied for a U.S. Passport on July 17, 2014 at the U.S. Postal Office located on Del Mar Avenue in Laredo, TX.  Fugitive GONZALEZ provided the address of 3218 Pecan Street, Laredo, TX, on his passport application.

On October 1, 2014, Deputy U.S. Marshal William GONZALEZ along with other U.S. Marshals personnel went to 3218 Pecan Street, Laredo, TX, and discovered that only the mother

8

and father of Eduardo GONZALEZ were residing at the residence.  GONZALEZ' wife, Norma

Gonzalez, and son, Eduardo Gonzalez Jr, were visiting at the time the deputies arrived.  They

stated that GONZALEZ was not living with them and they did not know his whereabouts.

From October 2, 2014 to October 6, 2014, Deputy U.S. Marshals conducted surveillance on

Norma Gonzalez and Eduardo Gonzalez Jr's residence, located on 3320 S Arkansas St, Laredo,

TX.  Fugitive GONZALEZ was not seen at the residence.

     On April 7, 2015, Deputy U.S. Marshal William GONZALEZ along with other U.S.

Marshal personnel went to 3320 S Arkansas, Laredo, TX, and found Norma Gonzalez and

Eduardo Gonzalez Jr living in the back house.  Fugitive GONZALEZ was not at the residence.

Eduardo Gonzalez Jr gave consent to Deputy U.S. Marshals Carlos GOMEZ and Shateim

MILLS to search his personal cell phone.  The deputies discovered a phone contact by the name

"Apa" with a number of (956) 480-8437 **(Target Device #1)**.  The word "Apa" is a diminutive of

"Papa" in Spanish, which translates to "Father" in English.  He also has a contact with the name

"Ama" (diminutive of "Mother" in English) with a number of (956) 286-4290, which has been

confirmed to be his mother's phone number.  Furthermore, a female living in the front house,

later identified as Melissa Gonzalez (fugitive's niece), stated that fugitive GONZALEZ had

come to the residence to visit, as recently as the prior weekend, but she did not know where he

lives.

    b. Based on the above information, US Deputy Marshals believe that the **Target Device#1**

belongs to and is being used by **Eduardo Gonzalez** for the purpose of communicating with other

persons to include immediate family members who continue to conceal, shield and harbor him

from detection to law enforcement authorities and therefore allow him to maintain his fugitive

status and in connection with possible violations of federal criminal statutes, including Title 18

U.S.C. § 3146 (Failure to Appear) and § 1073 (Flight to avoid prosecution) by Eduardo GONZALEZ.

c.     In Deputy U.S. Marshal GONZALEZ experience, information identifying the subscribers for numbers captured by a pen register and trap and trace device, and subscriber information associated with service changes, has yielded information that is relevant and material to fugitive from justice investigations.  Such information includes leads relating to:

(i)     the names of individuals associated with, and businesses relevant to a suspect;

(ii)    the location of "safe-houses" and other places of refuge or assistance;

(iii)   the identity of family members, friends and those who have gained a suspect's affection;

(iv)    the locations of money transfers, modes and means of transportation, businesses used by suspects, and even the identity of pizza or other fast-food delivery services providing suspects nourishment and sustenance;

(v)     the geographic breadth and frequency of a suspect's movements;

(vi)    the identities of those knowingly providing safe-harbor or assistance to a suspect, who may themselves be charged with concealing a person from arrest, accessory after the fact, conspiracy, or other crimes.

d.     Deputy Marshal William GONZALEZ has advised Applicant, that based upon his training and experience, one of the most useful, undetectable and reliable ways to identify the foregoing information and to quickly and safely arrest fugitives or to identify, locate and observe suspects is to evaluate the pattern of communications (whether calls, emails, texts, social network postings, etc.) made to and from TARGET DEVICE #1– and to

10

obtain information identifying subscribers for these communications – and to then conduct an investigation concerning those individuals. Based upon subscriber information, he would then direct other investigators to conduct surveillance at these individuals' or business addresses and to determine if a fugitive or other suspect is present at times when TARGET DEVICE #1 is present in the geographic area served by an active cell-site or accessing an IP address associated with a specific subscriber account.

e.      Obtaining the subscriber name, address, date of birth, social security number, driver's license information, contact names and numbers, employment information; and method of payment is critical to accurately identifying such subscribers because, among other things:

(i)      if the subscriber name is a common one and/or the subscriber address is not current, it can be difficult to accurately identify the subscriber without a date of birth, driver's license, or social security number, especially in an area with a population as the Southern District of Texas;

(ii)      if the subscriber name and address is fictitious, which frequently is the case when criminals purchase telephones, all or part of the remaining identification information may be truthful and help identify the subscriber or lead to identifying other co-conspirators; and

(iii)      by accurately identifying subscribers using the above-requested information, agents can eliminate innocent individuals as targets.

f.   The investigating agents have further advised me that the general geographic location of

the **Target Device** #1 derived from cell site information used by the **Target Device #1** can be used to corroborate the observations of surveillance agents.  More specifically, surveillance agents can compare observations of the user of the **Target Device** #1 with cell site information in order to verify the identification and proximate location of the user of the **Target Device #1** .

3.      Accordingly, based upon the above proffer, and pursuant to 18 U.S.C. §§ 2703(c)(1)(B), 2703(d), 3122, and 3123, because there are reasonable grounds to believe that such information is relevant and material to the ongoing investigation, I further request that the Court issue an Order requiring the **Target Device #1's Service Provider(s)** disclose, or provide upon oral or written request by Special Agents of the **Investigative Agency**, the information set forth above.

## D.    REQUEST THAT THE ORDER PRECLUDE NOTICE AND THAT THE APPLICATION AND ORDER BE FILED UNDER SEAL

1.      Based upon the information provided in this application, I believe disclosure of the requested court Order may result in flight from potential prosecution or the destruction of or tampering with evidence, or may otherwise seriously jeopardize the investigation.   Moreover, the exact nature of the United States "pen register" device and its configuration is classified as a law enforcement sensitive investigative technique, the disclosure of which would likely jeopardize other on-going investigations, and/or future use of the technique.  Therefore, pursuant to 18 U.S.C. §§ 2705(b) and 3123(d), I request that this application and Order be **SEALED**,  that the identity of any targets of the investigation may be redacted from any copy of the order served on any service provider or other person, and that the Court direct the **Target Device #1's Service Provider(s)** not to disclose in any manner, directly or indirectly, by any action or inaction, the

existence of the Order, in full or redacted form, of the pen register or trap and trace devices, or of this investigation, to the listed subscriber(s) for the **Target Device #1**, the occupant of said premises, the subscribers of the incoming calls to or outgoing calls from the **Target Device #1**, or to any other person the listed subscriber(s) for the **Target Device#1** , or to any other person until otherwise ordered by this Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on April 21, 2015, at Laredo, Texas.

Respectfully Submitted,

KENNETH MAGIDSON
UNITED STATES ATTORNEY

May Lou Castillo
Assistant United States Attorney
Southern District of Texas